The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. Welcome to the Fourth Circuit and our first case today is the United States v. Jacobs. Mr. Cain, we'll be glad to hear from you. Good morning, Your Honors, and may it please the Court. My name is Kyle Cain and I represent the United States. I would like to reserve seven minutes for rebuttal. The District Court should be reversed in this case. The District Court dismissed counts 922G1 and 922G9 as unconstitutional without the benefit of Rahimi, Canada, Hunt, and Nutter. As we now know from this Court's precedent in Canada and Hunt, the G1 challenges are foreclosed. G1 is facially constitutional and as-applied challenges are not going to be permitted for those. Nutter found G9 facially constitutional and we think that this Court's holdings in Hunt and Nutter pave the way and show the way and necessarily require that as-applied challenges to G9 should fail as well. You're going to tell us why. I am going to tell you why. Is your position that they must categorically fail? We are asking for a categorical ruling from this Court. That seems like an odd thing for us to do, right? I understand on G9 that's been resolved and I understand your argument with respect to G1's resolved, G9 facial is gone, but that's what a categorical judgment is, right? It's a facial challenge. But Nutter seems to leave open the very idea that there could be an as-applied challenge in some set of circumstances. And I will acknowledge that the district court's rationale here probably doesn't survive Nutter. But we tend to decide cases based on the facts before us and we don't have any of the facts about Mr. Jacobs. We can surmise some of them and maybe those are going to be a pretty good reason why his as-applied challenge would fail. But it seems odd to have a decision here when we don't have his full criminal record. We don't know the circumstances of his misdemeanor, domestic violence offense. We don't know what he's done in the interim. We don't know any of the things that would naturally be relevant to an as-applied challenge. And you're asking us to just reject it without any of that information. That seems unusual, doesn't it? I don't think so, Your Honor. And so I guess we could talk about what an as-applied challenge to G9 would actually look like and the things that a court would want to consider in that. And I think that G9 is interesting for as-applied challenges because the definition for misdemeanor crime of violence in 921 is so specific and necessarily involves the use of force. Or the attempted use of force. But we know after Castleman that that includes just an offensive touching. It does. If my wife spits on me, in theory she could be prosecuted as a misdemeanor crime of violence. But we wouldn't naturally think of that as a particularly violent offense, right? Well, I agree that it would not be a violent crime, and it's not classified as such. It's going to be a battery. And so why would she be at risk of – why would she be dangerous and such that she should be permanently disarmed merely because she happened to spit on me when I said and did things that I plainly should not have said or done? Well, first of all, this court and I believe the Second Circuit have said that this is not a permanent disarmament. The statute itself provides ways that you can get relief from a misdemeanor crime of domestic violence through expungement, restoration of rights, or a pardon. So it is not a per se permanent ban. That's in a facial setting, I think, where that's been said. It has, but I think that that is relevant to an as-applied challenge as well, particularly on this record where we have no information about that. But it's not a – Do we know whether he sought any of those things? We don't. Do we know whether the executive denied them or he addressed them or – None of that is – I mean, the problem is – like, the problem I've got is that you're asking us to make this decision where – and I agree. We've got to vacate the district court's decision on the G-9 as applied. But I don't – it seems very difficult for me to make that decision in the abstract without any of the things that we've described. What – the nature of that prior – I mean, was he convicted of a spitting offense or was he convicted of, like, physically beating his girlfriend? That's also not in the record. It was a battery. It was some sort of offensive touching. If I could get back to the initial question that you asked about as-applied challenges and, you know, what we would be looking at, I think that G-9 is – But your bottom – well, I'm assuming your bottom, bottom line is if there's any circumstance that permits this G-9 as-applied challenge to go forward, that's acceptable to you. But your bottom line, I take it, is that you want a ruling like Hunt where any as-applied challenge is categorically banned. Correct, Judge Agee. I think – and I think that that's what is actually required by Hunt and Nutter. Because what we know from Rahimi is that Congress has the ability to look at a category of people, make a determination on that categorical basis that they represent a danger, and they can be consistent with the Second Amendment. Of course, the language of Rahimi, a lot of different ways. And the decision does say that we're not suggesting that the Second Amendment prohibits possession of guns by category. But at the same token, they didn't say it does. And then when you get to the holding in Rahimi, it's very limited based on a temporal factor. So even though you're absolutely correct, Hunt adopted that categorical approach, which I suspect, among others, Justice Barrett would not agree with, it hasn't gone elsewhere. And the Supreme Court's told us many times felons are different. But what happens if we took Judge Richardson's example? And those of us who know Judge Richardson well might well understand the actions of his spouse, but we'll put that aside. In every circumstance. So let's assume that happens. They're 18 years old. They get some – she gets some sort of misdemeanor conviction. Thirty years go by. Perfect record. Citizen of the year. And she happens to be in a hunting camp preparing a meal, and somebody asks her to hold a firearm while they pick something up. So she's holding the firearm. And for some reason, there's a raid. And she's arrested and charged with the G9. Is that categorically banned without any doubt? I think it is, Your Honor. I think that that is what Nutter says. Nutter – Nutter specifically says that it doesn't say that. I think Nutter – Nutter says that, like, not talking about as-applied challenge. It does. I'm not – You think it was being dishonest when it said that? No, I'm not saying that Nutter analyzed the as-applied. I'm saying that Nutter talked about the temporal arguments, and it does say – or sorry, Hunt. I apologize. Hunt talks about the temporal arguments. Because Nutter talks very specifically about saying on this temporal argument, right, Nutter says, well, we know that there will be some people that are arrested under G9 in a short time after their domestic violence offense. Yes. And so as a facial matter, that means that the temporal issue isn't sufficient to resolve a facial challenge. But by saying that, it necessarily implies that the temporal issue might well be relevant in an as-applied challenge. It does. So let me talk about what that might look like and where – so if the court were to write that there is some room for as-applied challenges on a temporal basis, I'm not sure where the court would pull the rule for that from. There's nothing in – well, let me cabin the statute for one second. Are you familiar with the Second Circuit's decision earlier this year in Simmons? Yes. Because they certainly seemed to leave the door open for an as-applied challenge in this circumstance. I think that they foreclosed – No, they say that the defendant, Simmons, offers no basis to distinguish himself from other domestic violent misdemeanors for purposes of assessing this statute. That sounds like to me that there could be some circumstance, maybe theoretical, but they're not adopting a categorical approach. Okay. So if the court were to want to leave open a temporal thing, it's tough for me to imagine what that rule looks like. And I want to say another word about a potential rule like that. Basically, while we don't create rules in an abstract sense, we examine a particular person in our hypothetical of my spitting and hunting wife. We might well have to grapple with, is 30 years of flawless behavior following a spitting conviction in which she held 30-06, does that fall within the justifications for disarmament that are put forward by the government? And we can debate whether it would or would not, but we ought to be debating that in a case where 30 years have passed and it's my wife. So I think that those are great arguments to make policy considerations for the statute to be amended. I don't know that that – No, no, no, but the Second Amendment protects the right to keep and bear arms. It does. The question is when can the government take those arms from you? And there's no doubt that there is some set of circumstances for which the government is justified in doing so. Rahimi makes it very clear. But Rahimi also very much leaves open, as does Nutter, that those justifications might well in some case run out such that the Second Amendment's protection applies to my wife in our hypothetical. Sure, and – That's not a policy argument. That's a constitutional protection argument. Well, talking about the policy argument, I mean it's like when we're trying to come up with a rule of how long is too long for a conviction to qualify for disarmament, there's nothing in any case right now. There's nothing in the statute that you could pull a number from for that. In fact, Congress did put a temporal limit on a particular subset of these convictions in the statute. 921 has, for the dating relationship, if five years have elapsed, you only have one misdemeanor crime of domestic violence against a person in a dating relationship. That doesn't qualify as one. It seems to sort of acknowledge the point that there are circumstances in which the justifications for disarmament no longer apply. And Congress has obviously recognized one of those. But your argument is that should be the only one. There can be no other. There is no other factual circumstance, is your argument, that could possibly justify – There's nothing in any opinion from the Supreme Court or this circuit that sheds any sort of light on what that rule might be. And if I could say a word about what a problem with such a rule – Well, we've asked a lot of questions, so we'll give you a little extra time. But it seems like to me the corollary of your argument is that Congress could have written 922 simply to say, if you do any of these things, you cannot possess a gun, period, full stop, end of story. But that's not how the statute's written. The statute is written like that for a spouse or anyone who's not in a dating relationship. Unless the conviction – you get relief from the conviction through a pardon or an expungement, or you get your rights restored, which you can petition for. But the word that I want to say about a potential problem with such a rule for a temporal limit on this is it's going to create an additional constitutional and prosecution hurdle with these cases because of the Supreme Court's decision in Rehaef. You have to be on notice. You have to be aware of your status, that your conviction qualifies. And if there's some sort of fact-bound determination that a district court is going to have to make about whether or not this conviction is too old or you've been good enough in the meantime, I'm not sure how a person would be on notice that they are prohibited. But you would be on notice that you're barred by the statute. Rehaef requires you to understand that you're barred by the statute. Correct. It doesn't require you to know what the constitutional challenge result would look like. But some person – So your own notice that you're barred by the challenge, your own notice, you have the knowledge that Rehaef requires. But you would say I think I fit this exception and the statute doesn't apply to me is the problem with a rule from my perspective. So the problem – your argument is the problem with applying the Second Amendment is it's going to arguably, although I don't think so, arguably make prosecution harder. That's the concluding comment that you've got. No, I would first of all say that there's not a Second Amendment issue with that. But no, I think it's a constitutional issue for defendants being on notice of their status related to the Second Amendment. It does create a prosecution hurdle, but I think there's a notice issue to defendants if there's such a rule. I'm way over my time. If there's no other questions, I'd like to reserve the remaining time for rebuttal. Mr. Cain, you've got some rebuttal time. Mr. Moss. Good morning, Your Honor. May it please the Court. This Court should affirm the District Court's decision that 922 G-9 is unconstitutional as applied to Jacobs. Let me make sure that we're all on the same page as what's here. I think you've conceded that facial challenges to G-1 and G-9 are barred. Yes, Your Honor, we're recognizing that. As applied as the G-1 is barred by Hunt. Currently, Your Honor, yes. We recognize that. All right, so all we're left with is a G-9 as applied challenge. Under the current state of law, Your Honor, I would agree with that. All right, so Mr. Jacobs was convicted of a misdemeanor domestic violence offense. Correct. And you haven't argued that this five-year exception applies in this case? That was not argued below Your Honor. Okay. And at the time Mr. Jacobs was arrested, he was in the process of another domestic violence incident, shooting the apartment up with his girlfriend. So why doesn't that, in and of itself, end this case? Your Honor, I would say that I think the allegations, that factual allegation laid out by the United States is contested. I don't think Jacobs was never convicted of that domestic violence offense that's alleged, nor was there any judicial determination he engaged in. Is there any place in the record where that's contested? I believe it is contested in the record insofar as they were arguing that the as applied challenge should succeed in this case. What I'm looking for is some place where he or counsel says, I didn't shoot the apartment up with my girlfriend in it. I would say the record is— He pled not guilty. Correct. Right. Your Honor, and there's been no judicial determination of guilt in that case. Did he waive his detention hearing? I don't even, but at the time that this 922 G9 case— No, no, but start with the answer and then give me an explanation. Did he waive his detention hearing? I wasn't his attorney below, Your Honor. Okay. I believe that the government did not move to detain him. I believe he was just on bond for the 922 G9 charge. The domestic—if there was a state charge for that domestic violence of the government— So you think he was not detained? You just don't know whether he was detained or not. I don't know, Your Honor, but I do believe that for the federal case, he was not detained. I could be incorrect on that. Again, I was not— Can you tell me what about Mr. Jacobs in particular? Except for a minute that the argument about spousal abuse that the district court adopted is not a persuasive one. But what about Mr. Jacobs in particular takes him out of the heartland of the domestic violence disarmament statute? So what about him makes him sort of like my spitting wife who likes to hunt after 30 years of exemplary service, right? Why is he more like her than what you would think of as the core justification of a repeated domestic violent defendant? And to add to that, in the words of the Second Circuit, what basis distinguishes Mr. Jacobs from other domestic violence misdemeanors? This predicate misdemeanor was approximately 12 years old at the time of the federal indictment. How do we know that, by the way? I believe it was stated in the record in the joint appendix that he was convicted in 2013. Okay. So we know it was 12 years old. Yes. What else do we know about that prior conviction today? I don't think we know anything else about that prior conviction today, Your Honor, except that he did not sustain a subsequent misdemeanor domestic violence conviction within the interim 12 years. I think that indicates rehabilitation. But was arrested at the end of the 12 years in an alleged domestic violence scenario. Correct, Your Honor, but there's no, again, no judicial determination of guilt there. Right, but you agree that you bear the burden of showing the as-applied challenge, right? And so you have to show the fact there's been no determination is something, but you've got to show that your client is unusual. He doesn't fall in the heartland. And to say we don't know anything about his conviction and, yes, he's been accused of possessing a firearm in the process of committing domestic violence, neither of those things really help you establish that your client is outside the heartland. Let's look at Jackson, Nutter, Gales, Simmons. We know Jacobs has one misdemeanor domestic violence offense that is approximately 12 years old. He's not a two-time domestic violence convict like Jackson in the 10th Circuit, not a three-time domestic violence convict like Nutter in the 4th Circuit. He's not a serial perpetrator of domestic violence like Gales in the 6th Circuit. Well, a serial, I don't know. It's true we don't have an adjudication with respect to this second domestic violence event, but, like, we've got the allegations of it, and so he might be a serial domestic abuser. My problem is you've asked us to affirm. Your colleague has asked us to reverse. It seems like to me we just don't have enough information to evaluate whether, and it seems like to me you've got a pretty steep hurdle here, but it seems like to me we lack the information about the prior conviction. We lack information about what he's done over the last 12 years. It seems, with the very limited information we do have, that he's not been a model citizen over those 12 years with respect to other criminal offenses, and we know that the allegations under which he's arrested, that seems to probably put him right in the heartland of these cases, but all of that's a little supposition because we don't have any of those facts. That's correct, Your Honor. We don't have a record that I believe would allow me to answer that question completely. However, what we do have is— Do you know whether the first domestic violence offense was against a non-girlfriend, like a spouse or a child? I don't believe that's in the record, Your Honor. The record is sparse, Your Honor, and I think that here at the outset if we look at the joint appendix, it suggests that the United States failed to meet its burden in showing— this is going back to Bruin Step 2— that 922 G-9 as applied to Mr. Jacobs is consistent with the nation's historical tradition of firearm regulation. Let me ask you about how is it, in looking at Rahimi, and a few courts have said that the historical analog under G-8 translates to G-9. Why is that not the case? Your Honor, I think there are multiple reasons why the historical analog under G-8 does not translate to G-9, particularly because, as Rahimi notes, that G-8 is temporary in nature and it automatically restores one's right. There's no conviction there. Correct. Well, there's no conviction, but also in Rahimi it says we are looking forward, looking in terms of any violence, which, of course, your client is arrested for another domestic violence charge. Yes, Your Honor. G-9's force element looks to the past conduct. G-8 requires a present judicial determination that the individual poses a credible threat of physical safety of another. And if we look with regards to the record, which understandably is sparse, as applied to Jacobs, there's no judicial finding of present conduct. In the past conduct, the record does not indicate whether a firearm was used. It does not indicate anything, but I think what we can surmise from that is there's no actual evidence to expect that he might possess a firearm currently. Right, but as you were going over with Judge Richardson, the government's burden was to show there was a prior domestic violence conviction there was and that he possessed a firearm after that conviction. They did that. So then it seems that, as Judge Richardson indicated, it was incumbent on you to show that something in that intervening time period sets him apart. He won six Nobel Prizes or whatever had happened. Or there was some peculiar aspect of this case, which there doesn't appear to be, that would establish a basis to differentiate him from other domestic violence convicted offenders. And there's just nothing in the record I see that does that. The record is sparse, Your Honor, and I think part of the reason is that the court ruled that the government did not meet its burden in this case. And I would note that if we look to the joint appendix and we look to the record in this case, it does not appear that they argued going on. It did that, but it did it without the benefit of these other cases we've been talking about today. And I can understand after Bruin there's been a lot of confusion. In some respects the Supreme Court didn't do us any favors. But now that you do have the benefit of these other cases, there doesn't seem to be much left of the actual reasons used by the district court. Well, Your Honor, Bruin makes clear that the district court is entitled to decide a case based on the historical record compiled by the parties. They're not obligated to sift through it. That's the government's burden. If we look at the joint appendix, it does not appear that the government, you've already acknowledged the government met its burden in this case. It presented its case in chief. And then once it's done that, it's incumbent on you to show why there's some sort of an exception here other than a decade has passed. That seems to be your only argument from the record. Your Honor, I don't believe they didn't meet their burden because I don't believe they ever identified going armed laws as a relevant historical analog. Counsel, here's the rub, right? So you want the government to have to meet Bruin's Step 2 with respect to G9. The problem is, like, Nutter's already done that, right? And so you're right. If this was the first case, we might well hold the government to their burden at Step 2. The challenge is, like, Nutter's already done that. And what we don't get to do is hold the government to its burden each time it comes up. We have made the determination, right or wrong, based on a legitimate historical record or not, right? We've made that determination, right? And the district court relied on sort of a different historical record with respect to spousal abuse that is flatly inconsistent with Nutter. So we have to say, like, that doesn't work and that, in fact, the government has met its Bruin's Step 2 burden with respect to G9 as a facial matter. And then the question is, how do you take yourself out of that with respect to an as-applied challenge? And that's not the government's burden now, right? It's now your burden to show why you are not within the heartland of those cases, right? And so I look at this record, and I understand you were arguing, and the district court was addressing this in a time when they lacked the guidance they have now. And so it's a little unfair for us to, you know, we're certainly not criticizing the district court, but we now have to decide it based on the record we have before us, and that would require your client having some reason to establish that they're outside of the norm. So I don't think you've got a Step 2 government's burden issue here. I understood, Your Honor, and living with the record as it is, what we can say is that this conviction was 12 years old, so I do think that there is that temporal proximity argument. We can compare what we know from the record of Jacobs to what we know from the record of Jackson, Nutter, Gales, and Simmons, and all of those individuals had much greater criminal history than Mr. Jacobs. Well, do we really know that? Because we don't really know Mr. Jacobs' actual criminal history, do we? I suppose we know his criminal history on the record. Right, but we don't actually know what his criminal history was. We don't actually know anything about the initial conviction, right? We don't know what he's been doing in the interim, right? We don't know the volunteer work he's done or the employment history or the whatever else it is you want to include. We can think about all kinds of things we might include. Sort of why I thought what you were going to say is, all right, fair. The district court's reasoning doesn't work under G-9 as applied. But what you ought to do, given the development in the case law, is vacate that decision and remand it and let the court figure out whether Mr. Jacobs is such a person or, as frankly it appears with the limited information we've got, Mr. Jacobs is not such a person who could legitimately bring an as-applied challenge. Your Honor, I contemplated that. I believe that that would be a fair result. My position is that Mr. Jacobs would propel an as-applied challenge even based on the record as-is. But I understand that obviously developing a record in this case would be helpful, arguably, to both parties. And I would note that I agree with Your Honor that as-applied challenges in 922 G-9 do remain viable post-Nutter, Hunt, and Rahimi. I don't think that any of those cases frustrate that position. Given the sparse record, if the court has no other questions, I'd move for the record. All right. Thank you very much, Mr. Moss. Mr. Cain, do you have some rebuttal time? If I could start with some JA sites that kind of go to some of your questions for Mr. Moss. In the JA-24, I include some facts about the altercation. Mr. Jacobs did— Hold on a second, counsel. Let me catch up with you, if I can. Okay, 24. Mr. Jacobs submitted to a custodial interrogation, waived Miranda rights, and admitted that a firearm was discharged. He said it was an accidental discharge, but he admitted that a gun went off during the altercation. Then going— Did he admit that it was a domestic violence discharge? He admitted that he was in an altercation with his significant other and that a firearm went off, but it was accidental. Was he married to this significant other or not? He was not married to this individual. Do you know whether he was married before? In particular, was he married 12 years ago when he was convicted? So I don't recall, but what I can tell the court—it's not in the record, but legally— Then don't tell me. If it's not in the record, I don't want to hear it, right? But legally, I can tell you that the statute was amended to include the dating relationship after 2014, so a 2014 conviction legally would not qualify unless—if it was a dating relationship. So it would have had to have been one of the other categories. It would have had to be a spouse, a child, one of the other categories of misdemeanor crimes of domestic violence. If we assume that you got it right? Well, fair enough, Your Honor. I mean, I'm not impugning you, right? But it's just like a lot of assumptions here that we're building in into what's going on. J.A., pages 3 to 4, Mr. Jacobs was detained in this case. I don't recall if he waived detention or had a detention hearing, but he was detained in this case. And then also going back to J.A. 24, it was not 12 years. I'm not sure how much of a difference this makes, but the conviction was 2014. The offense and the indictment were 2023, so it was nine years from conviction to offense to indictment. And as we sit here today, it's been 11 years since that— From conviction to indictment, but offense conduct date was the 12-year date, right? No, it was nine years. The conviction or the offense conduct, right? Because the conviction happens after the offense conduct, right? So I don't know the offense conduct. It would have been the specific date. It was a misdemeanor in magistrate court. It would have been very quick. It would have been months, not years.  It would have been. All right, but the challenge I've got is like maybe. I mean, not that I'm not saying I don't trust you, but that seems like a thin reed for me to rely is that your experience with magistrate court— Actually, the case number is in there. It's a 2013 case number, so the offense conduct was 2023. Or 2013, sorry.   It's case number 13M4257, so 2013. So then to address Judge Benjamin talking about G-8 being distinguishable, the reason G-8 is a temporary restriction is because the order itself that causes the prohibition is temporary. As soon as that order is lifted, the prohibition goes away. So necessarily, that has to be a temporary restriction. I think that the opinion in Nutter has—this court has parsed the temporary, the temporal arguments and found them unpersuasive, at least on the facial challenge. But I would then point the court to JA-64, and this goes to the defendant's burden on an as-applied challenge, and also some of the things that we talked about earlier about what's the difference between a facial and as-applied challenge in this context. And the court, starting at line 13, the court was not clear from the briefing whether the defendant brought a facial or an as-applied challenge. And Mr. Compton actually had to confer with his client about what they were bringing, and then said that it was both. And he said, I think the arguments are frankly the same. And I do think in the G-9 context, because the definition of the misdemeanor crime of domestic violence is so specific for who qualifies, what kind of offense had to happen, there is— So specific, right? It includes spitting and beating. It does. It includes a wide array of things. It includes intentional conduct, but it also includes reckless conduct. We know that from Voisin. Right? And so when you say it's so specific, that seems like odd. It might have been thought-specific pre-Cassellman and Voisin, but it's hard to say it's so specific today. Well, it's specific as to the offenses that qualify. So I think to the extent that there is room for an as-applied challenge, I think the temporal arguments are where that work could be done. I think that— Or in the nature of the offense, right? If it's purely reckless, like spitting—  Imagine—I mean, if there was a reckless spitting and that resulted in a domestic violence misdemeanor, we might wonder about whether that falls in the heartland of the justifications for disarming folks, right? Well, I think Voisin has said that. I would also say that reckless conduct can also be a felony, and this court in Hunt isn't doing felony-by-felony litigation, and I don't think the court should get into that business in the domestic violence context. Well, of course, that's in a felony category, which the Supreme Court's been pretty strong on in all of its decisions. But starting on page 64, where there's this discussion about, well, what type of challenge is it? And only a few pages later, the district court goes on to rule as to historical tradition and that sort of stuff. So, there really wasn't—and I'm asking you—there really wasn't an opportunity or a need, based on what the district court did, for the defendant to proceed further to put on any additional case with regard to the record. I mean, it had already been ruled as a matter of law that he was free to go. It wasn't an offense. So, you know, a lot of times in that circumstance, if we see, well, there was a legal error, we will vacate and send it back to the district court and put on whatever additional evidence there is they want to put on. But once the legal error is corrected, the district court in the first instance goes on and adjudicates on the full record once there's the opportunity to make that record. And if that's the way that this court sees that, then I would ask— Well, I mean, wouldn't you agree that putting aside the firearms part of this, in a lot of cases, that's exactly what we do. Yeah. To be perfectly frank, it's unclear to me. I think it's very intertwined whether or not the district court ruled that G-9 was facially or as applied failed. If I'm recalling the record correctly, I know I asked that specific question as to G-1. Right. I take Judge Agee's point to be if the district court finds as a matter of law that it's facially invalid— Correct. Then you don't then sort of say, well, Judge, we need you to make an as applied ruling too. Yeah. And that's what I'm saying. If that's the read that the court has, I think that that's fair. And I think you just don't address the as applied then and remand it to the district court to make a finding that the court can examine if it's going to leave that open. So, if there's no further questions, I would ask you to reverse the district court and remand for proceedings consistent. All right. Thank you very much. We appreciate the arguments of both counsel. And I note, Mr. Moss, that you were assigned outside of your normal duties, so to speak, and that the court's appreciative of you undertaking that task. So, we're going to come down and greet counsel, and then we'll move to our next case. Thank you.
judges: G. Steven Agee, Julius N. Richardson, DeAndrea Gist Benjamin